20AB-CC00185

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

STATE OF MISSOURI      )
                          ) SS.
COUNTY OF FRANKLIN    )

IN THE CIRCUIT COURT OF FRANKLIN COUNTY, MISSOURI
CIRCUIT JUDGE DIVISION

| | |
|---|---|
| BOULDER DEVELOPMENT CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. |
| ) | Division |
| CITY OF ST. CLAIR ) | |
| ) | |
| Defendant. ) | |

## PETITION FOR INTENTIONAL FRAUDULENT MISREPRESENTATION, FRAUDULENT MISREPRESENTATION BY CONCEALMENT, NEGLIGENT FALSE MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, INVERSE CONDEMNATION AND VIOLATION OF 42 U.S.C. §1983 AND 1988

Comes now, Plaintiff, through counsel and for its cause of action against Defendant, states to the Court as follows:

### Allegations Common to All Counts

1. Plaintiff, Boulder Development Corporation, (herein after "Boulder") is a Missouri corporation with offices in St Louis County Missouri that owns property in St Clair, Franklin County, Missouri more particularly described in **Exhibit 1**[1] (sometimes referred to as "Boardwalk Subdivision" or just "Boardwalk").

2. Defendant, City of St Clair, Missouri ("City") is a fourth-class Missouri municipal corporation located in Franklin County, Missouri, that owns and maintains a water

---

[1] All Exhibits are attached hereto and incorporated by reference herein.

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

system and sells water to customers for their private use, and as such, was acting in a proprietary function.

3. On March 21, 2005 the Board of Alderman passed Ordinance 1340 which authorized Mayor Barns to execute an agreement with MoDOT for the construction and maintenance of a water system and sanitary sewer collection system to serve the area between where the City services at that time terminated and the I-44 Rest Area along the North Outer Road West of I-44. On March 23, 2005 the Highway Commission and Mayor Barns executed Missouri Transportation Commission Utility Agreement, Job No. J610977B, marked **Exhibit 2** ("MoDot Utility Agreement"), providing in relevant part as follows:

> (2) <u>INITIAL CONSTRUCTIONS</u>:
>
> (A) "…The Commission, at its sole cost and expense, will replace the existing independent water source and sewage lagoon by constructing a water main and sewer system, both of which will connect to the City's water and sewer services…"
>
> (4) <u>MAINTENANCE AND OWNERSHIP</u>:
>
> (A) The City shall maintain and own the waterline installed by the Commission in its entirety, up to and including the booster station and water meter set at the service site. The City will maintain and own the sewer force main installed by the Commission from its origin at the existing sanitary sewer manhole just north of Roller Road to State Route WW.
>
> (5) <u>TRANSFER, OWNERSHIP AND MAINTENANCE UPON CONSTRUCTION</u>:
>
> (A) After construction of the water main and sewage system and after the utility lines have been inspected and accepted by the City, the Commission will convey the water main and sewer system and thereafter, the City shall own, operate, and maintain the water main and sewage system in accordance with this Utility Agreement at its cost and expense. The City will be permitted to construct any new service connections to the water main...

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

4.  The original MoDOT site for the booster station was where the water line connects to the existing City water system (See **Exhibit 11** hereafter).

5.  The City was responsible for obtaining easements for the water and sewer lines as well as determining the location for the booster station for the water line and the easement for said booster station. (**Exhibit 3**). In obtaining easements and making design determinations for the location of the booster station, the City was participating in the design and construction of the water and sewer lines and acting in a proprietary function.

6.  The site for the booster station that was obtained by the City was by the VFW Hall (**Exhibit 3**) was substantially higher (34') than the original site for which the booster was designed (**Exhibit 4**).

7.  On May 3, 2006, Tim Hellebusch, MoDOT Resident Engineer, advised the City, in part, as follows:

    1.  The use of a Fire Pump Truck with greater than a 500 GPM pump or the use of the 4" (largest) nozzle on any hydrant is not recommended on this Water Line. This has the potential to cause the fire pump at the Booster Pump Station to cavitate and draw down the suction pressure below 20 psi.

    2.  The Water System was only designed to use one fire hydrant at a time.

    (**Exhibit 5**).

8.  On May 11, 2006 in a meeting between the City, Jeff Meadows the City consulting engineer, MoDOT, Vandevanter Engineering, the Fire District, and others, it was noted that the flow rates were insufficient for fire protection and subdivision development. Bill Haag, the project engineer from Burns & McDonnell, stated that the original pump location design was at the connection to the City system. The VFW location was used because they couldn't obtain an easement at the original design location. At this meeting

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

it was pointed out that larger pumps wouldn't solve the problem of insufficient water flow. See meeting minutes marked **Exhibit 6**.

9.  In a letter dated June 8, 2006 (**Exhibit 7**), Mindi McCoy, the Mayor, admitted in a letter to Bill Hagg:

> **"It appears that much of these issues could have been eliminated with the booster pump station being located near the point of connection with the system**. Although the existing facilities may be able to technically meet the 500 gpm criteria at the Rest Area, the design apparently does not consider any value to the City of St. Clair system and its expandability. **Without this feature, this project has no value to the City of St. Clair**."

10. On or about June 27, 2006 the Mary D. O'Brien Revocable Living Trust, Carol A. O'Brien and Joan M O'Brien, Trustees filed a Petition to Request Annexation ("Annexation Petition" marked **Exhibit 8**) into the City of St. Clair, Missouri, with two of the six conditions being:

> 1.  The closing of the sale of the real estate to Plaintiff (p. 1 of Exhibit C to Annexation Petition); and
>
> 4.  City to provide water main and sanitary sewer force main along the North Outer Road.

The Petition also had a preliminary drawing prepared by Washington Engineering and Architecture (hereinafter "WEA") showing approximately 251 one acre lots on 291.33 acres as a proposed residential development (referred to hereafter as "Boardwalk").

**(Exhibit B to Exhibit 8)**

11. The Sale Contract between the Mary D. O'Brien Revocable Living Trust as Seller and Plaintiff as Purchaser dated April 1, 2006 (**Exhibit 9**), provided as one of the contingencies:

> 1.  <u>Contingencies</u>. Purchaser's obligation to close on the property under the contract is contingent upon Purchaser's satisfaction with or waiver of the following contingencies within the times hereinafter specified,

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

satisfaction of all such contingencies to be at the sole cost and expense of Purchaser:…

e) <u>Zoning/Governmental</u>. The property being re-zoned, if necessary, to a classification reasonably acceptable to Purchaser by appropriate governmental authorities. Seller shall provide its reasonable cooperation to Buyer with respect to obtaining governmental approvals for residential use of the property.

(See **Exhibit A to Exhibit 9**, paragraph 1[e]).

12. The St. Clair Planning and Zoning Commission met on July 10, 2006, to discuss among other items, the O'Brien annexation (**Exhibit 10**). Their minutes reflect in relevant part:

The P&Z members discussed this annexation and had no issues with the annexation of this property, **if utilities could be provided**. If utilities can be made available, they would recommend approval of this petition to the Board of Alderman. (emphasis added)

13. On July 11, 2006, William O. Haag, III, as Project Engineer on behalf of MoDOT advised the Missouri Department of Natural Resources that:

"The booster pump station was originally designed to be sited immediately adjacent to the connection to the existing 12-inch water main."

\*\*\*

"During the easement acquisition phase of this project, Missouri Engineering indicated the booster pump station would have to be relocated to its current location, as shown on the project plans, due to the City's inability to acquire an easement for the original booster pump station site. The City's engineer indicated that 30-psi at 500-gpm could be provided at the new booster pump station location, even though it sits approximately 34-feet higher than the original location."

(**Exhibit 11**).

**NOTE**: Missouri Engineering was the City's Project Engineer.

14. On September 5, 2006, the Board of Alderman passed Ordinance No. 1428 (**Exhibit 12**) which annexed the property identified in **Exhibit 1** into the City of St. Clair, Missouri. Said ordinance contained the following relevant conditions:

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

SECTION 2: Annexation of the foregoing Property is subject to certain conditions, including the following:

1. This Ordinance shall become effective only in the event Boulder Development Corporation, the purchaser of the Property under a Sale Contract dated April 28, 2006, entered with the annexation Petitioner, the Mary D. O'Brien Revocable Living Trust, as Seller, closes on the purchase of the Property and pays the purchase price to Petitioner on or before October 28, 2006, in accordance with terms of said Sale Contract (hereinafter "Condition"). Otherwise, this Ordinance shall be void and of no force or effect. Certified copies of this Ordinance shall not be filed in accordance with Section 71.012.3, RSMO, unless and until this Condition is satisfied, and if not closed by December 31, 2006, this ordinance shall be of no force and effect.

4. The City to provide water main and sanitary sewer force main along the North Outer Road only, upon acceptance by MoDOT and the City of St. Clair. Until acceptance is achieved, the City will have no obligation to provide water or sewer to the Property.

15. The Franklin County Commission issued its Order, 6-257, (**Exhibit 13**) on September 19, 2006, which was recorded by the Franklin County Recorder of Deeds on December 27, 2006, recognizing that the property identified in Exhibit A as being duly annexed by the City of St Clair, finding as follows:

WHEREAS, on September 12, 2006, annexation ordinance No. 1428 received from the City of St. Clair was filed in the office of the Franklin County Commission in accordance with Section 71.012 RSMo 1994 on certain territory lying adjacent and contiguous to the present city limits of the City of St. Clair; and

WHEREAS, **the governing body of the City of St. Clair has determined that it has the ability to furnish normal municipal services within a reasonable time after such annexation is to become effective** and the area to be annexed meets the criteria required by Missouri statutes. (emphasis added)

NOW THEREOFRE, the Franklin County Commission recognizes the territory as described in "Exhibit A", the annexation ordinance, as required by law, a copy of said ordinance being attached here to and incorporated by reference herein as being annexed by the City of St. Clair.

16. On October 5, 2006, Mayor Mindi McCoy advised the Missouri Department of Natural

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

Resources that the City would not be providing DNR with an acceptance letter and further stating "The City of St. Clair, MO will not own, operate, and maintain this water line extension until it passes inspections **for appropriate water supply and pressure** in correspondence with fire protection…" (**Exhibit 14**).

17. On October 11, 2006, William O. Haag, III, as Project Engineer on behalf of MoDOT offered three alternatives "for modifying the existing booster pump station in an effort to address the City of St. Clair's concerns" (**Exhibit 15**); however, none of these options would get the water pressure up to the gallons per minute required by the St. Clair Fire Department.

18. MoDOT resident engineer, Tim Hellebusch, sent a letter to Mayor Mindi McCoy on October 30, 2006 advising her that the flow rate at the highest point of the water line was 544 gpm which was also the location of Boardwalk. (**Exhibit 16**) (NOTE: Boardwalk needed 1000 gpm at 20 psi to meet the Fire District regulations – see paragraph 20 below).

19. On November 15, 2006, Jeff Medows, a Principal of CM Archer Group, the City's consulting engineer, wrote a report (**Exhibit 17**) to Bruce Johnson, the City Administrator, presenting a summary of the known deficiencies of the water and sewer facilities constructed by MoDOT for the original purpose of serving the I-44 Rest Area as well as the additional City customer base, in particular allow future growth of the City's customer base.  Relevant portions are as follows:

> 4. <u>System Pressure & Flow with capacity for future growth</u> – Though our firm was not involved in this project until recently, it is our understanding the City agreed to participate in this project and ultimately assume responsibility for owning and operating the system based upon the condition that the facilities would be constructed to allow future growth of the City's customer base. **It has been stated many times that the**

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

**booster pump station is only pumping around 500 gpm, because that is all the City can provide. This is not the case. Had the booster pump station been constructed at a lower elevation in the system, closer to the point of connection as the original design calculations had assumed, the City's system would have been capable of producing more than adequate water flow and pressure for the booster pump station, increasing the current flow and future expansion capabilities. Had the designer re-ran the calculations for its current location during the design phase (not after construction) they would have been able to advise the City of this deficiency and proper actions could have been taken at that time.** However, that was not accomplished and now our options are limited. The options include:

> a. Upgrade the jockey pumps and reclassify the fire pump to a high service pump as detailed in Bill Haag's letter dated October 11, 2006 (Alternative 3);
> b. Relocate the booster pump station; and
> c. Construct an elevated storage tank.

(emphasis added).

20. On November 17, 2006, the St. Clair Fire Protection District in a letter (**Exhibit 18**) to

City Administrator Bruce Johnson stated:

> This letter is in response to your letter dated November 13, 2006, the water flow results provided to the City of St. Clair from the Missouri Department of Transportation in regards to the upgraded waterline to the I-44 rest area.

Referencing:

> Ordinance #9 **section 342 MINIMUM FLOW FOR RESIDENTIAL** (minimum flow from a single fire hydrant shall be one thousand (1000) gallons per minute at twenty (20) psi residual pressure unless hydrant is ordered on a pre-existing main.

Concluding:

> The Fire Protection District cannot approve any subdivision development in that area due to the fact that proper water flow cannot be achieved in the development if the main water lines are not meeting the minimum flows.

(emphasis added).

21. The City Council met in a nonpublic Executive Session on August 6, 2007 (Minutes

marked **Exhibit 19**). During that meeting a settlement agreement with MoDOT was

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

discussed:

    a.  Alderman Schuermann stated **there were two pieces of property by the rest area that have signed easements that were promised water and sewer. One piece of property is owned by...Kalishman with 291+ acres...**

    b.  Mayor Blum Stated [sic] he honestly feels when Jamie Barns signed the contract with MODOT to upsize the line to Highway WW it was for the purpose of expansion. MODOT is stating because the pump was moved to Highway WW, the pump does not have enough pressure because of the terrain.

22. On September 4, 2007, the City Council again met in a nonpublic Executive Session where Mayor Blum stated "to provide water service from WW west **the City would have to put in a tower**" (**Exhibit 20**).

23. Boulder first learned of these two Executive Sessions, where the City acknowledged its responsibility to provide water and sewer service to Boulder for Boardwalk, upon receipt of a Sunshine Act request delivered to Boulder on February 7, 2020.

24. On September 20, 2007, Mayor Blum signed a Settlement Agreement with MoDOT which was approved by Ordinance 1446 (**Exhibit 21**) that completely resolved and compromised all of the City's claims of costs incurred as a result of alleged water and sewer facility construction deficiencies at the I-44 Rest Area near the City of St. Clair, including but not limited to odor control, manhole corrosion, power failure, telemetry issues and system pressure and flow problems. MoDOT paid the City $57,300 as part of said settlement.

25. On April 4, 2008, WEA issued a full set of development drawings for the entire

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

Boardwalk subdivision. (**Exhibit 22**[2]).

26. On January 29, 2009 WEA issued an Engineer's Report on the Water Distribution Model (**Exhibit 23**[3]) which was emailed to CM Archer Group on February 2, 2009. (**Exhibit 24**)

27. WEA on January 31, 2011 issued a set of development drawings for Phase 1 which included the 10 lots at the entrance to the subdivision. (**Exhibit 25**[4])

28. These above mentioned development drawings were reviewed by the City Planning & Zoning Board on March 14, 2011. (**Exhibit 26**).

29. During the period from 2011 to 2016, Boulder and the City continued to discuss upgrading the pumps in the booster station since Boulder was not aware of the lack of water to the booster station as the fatal flaw in the water system nor were they aware that the City had no right to allow them to hook into the sewer force main.

30. On January 14, 2016 the City in an email from Jeremy Crowe, City Code Enforcement Officer, with a copy to the City Administrator, Travis Dierker (**Exhibit 27**), informed WEA:

> "To start, the booster pump located at IBEW – 1175 N. Service Rd. installed by the state may have been insufficiently designed to provide sufficient water and pressures to your client's subdivision. From my understanding work has been done on the controls and possibly the pumps and impellers in the past and the pumps are still not able to provide the proper flows or pressures. Besides that, this booster pump is a single point of failure for a large number of proposed homes and the City does not currently have the funding to upgrade not possibly maintain the buster pump in full working order to provide the services to the additional homes....There are several

---

[2] In the interest of brevity, a copy of the face page only is marked Exhibit 22.
[3] In the interest of brevity, a copy of the face page only is marked Exhibit 23.
[4] In the interest of brevity, a copy of the Plat 1 page only is marked Exhibit 25.

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

hurdles that need to be overcome before this development can proceed! The expenses related to providing City water and sewer to the subdivision including any upgrades, modifications or additional equipment to existing City infrastructure, may and quite possibly will be the full burden of your client."

As of this date, the City still had yet not disclosed to Defendant that the real problem was the insufficient water flow to the booster station that had been elevated 34 feet from the original plans.

31. Later on in the afternoon on January 14, 2016, Jeremy Crowe, City Code Enforcement Officer, advised WEA that additional work had been done on the (booster) pumps and possibly the impellers, but "the booster pump was still not providing the water and flows needed." (**Exhibit 28**).

32. Mark Harriman, Boulder's engineer, met with City Officials on August 31, 2016 to discuss a revised Phase I Plat in an effort to make progress on the development of the property. At this meeting he was told of the inability of the City to deliver water to the booster station and that they may not have rights to allow Boulder to use the sewer force main. **This is the very first time Boulder was told that the City could not provide adequate water to the booster station as required by City Ordinance 1428 (Exhibit 12) and as represented to Franklin County Commission in Commission Order 6-257 (Exhibit 13)**. See Harriman Notes marked **Exhibit 29**.

33. On October 31 – November 1, 2016, Judy Ann Wagner, on behalf of MODOT, advised Plaintiff's Engineer, Mark Harriman, that MODOT would not allow the Boardwalk Subdivision to connect with the sewer line (**Exhibit 30**).

34. On April 26, 2017, within five years after learning that the City did not have the ability to deliver adequate water to the booster station, that is had unilaterally elevated by 34

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

feet, which information Defendant fraudulently concealed and failed to disclose to Plaintiff, Boulder petitioned to de-annex from the City since it was clear that they did not have viable water or sewer service for the developing of the Boardwalk property into a subdivision. (**Exhibit 31**).

35. On May 12, 2017, the City advised Plaintiff that the City denied Plaintiff's Petition to De-Annex. (**Exhibit 32**).

36. Pursuant to a freedom of information disclosure provided by the City to Plaintiff, Plaintiff learned of correspondence dated February 2, 2017 wherein Daniel G. Vogel, the City's legal advisor, pointed out that the goal of the City was to force a development agreement upon **Plaintiff to pay** to bring the water system up to fire district standards. (**Exhibit 33**).

37. On February 7, 2017 Plaintiff met with Mayor Ron Blum and City Administrator Travis Dierker to review the status of the property.  They informed Plaintiff that the City wanted the Plaintiff to install a regional water tower that would cost approximately $1,000,000 (**Exhibit 34**) at Plaintiff's expense with eventual reimbursement for a portion of the costs from the City.  Because of the costs involved, Plaintiff informed the City that this was not acceptable.

In **Exhibit 34** entitled "De-annexation and Public Improvements Reconciliation", the City continued to omit and conceal that the City had unilaterally obtained an easement and relocated the booster pump from the original MoDOT plans to an elevation 34 feet higher, thereby preventing the booster pump from having adequate water to meet the St. Clair Fire Protection District's requirements.

38. In a letter dated March 6, 2018, City Administrator Travis Dierker informed Plaintiff

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

that the current booster station could not be modified because the inlet flow at 20 psi was 650 gpm.  Therefore, there was insufficient water entering the booster pump to obtain an acceptable outflow regardless how the pumps were modified. (**Exhibit 35**)

39. In February 2019 Plaintiff filed two minor subdivision plats of four lots each that did not require water and sewer infrastructure as a means of exhausting all administrative remedies (**Exhibit 36**).

40. The City hired a Special Legal Counsel, Daniel G. Vogel, who reviewed the plats and issued his opinion that: "this subdivision application does not qualify as a minor subdivision as it does not front an existing road or street".

41. The plats were reviewed by the Board of Alderman on March 4, 2019 where it was pointed out by plaintiff that the Special Legal Counsel had to interpret the City Code by reference to outside sources which rendered the code ambiguous on the use of a shared driveways.  Plaintiff pointed out that that the case law cited by the Special Legal Counsel instructs that zoning ordinances are in derogation of the property rights as conferred by the common law, and as such should, wherever ambiguous, be strictly construed in favor of the landowner.   The Board of Alderman, after finding Plaintiff's arguments compelling (**Exhibit 38**), tabled the request until the next meeting.

42. On March 14, 2019, Special Legal Counsel, Dan Vogel, after being fully aware that the goal of the City was to force a development agreement upon Plaintiff to pay to bring the water system up to fire district standards, advised the City that the plats do "not qualify as a minor subdivision under the City's Subdivision Code."

43. On March 18, 2019, the City denied Plaintiff's request for the two minor subdivision

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

plats. (**Exhibit 40**[5])

44. In a letter dated October 28, 2019 from Plaintiff to Defendant including the members of
the Board of Alderman individually, the Mayor and the City Administrator, the Plaintiff
pointed out the Defendant's obligation to Plaintiff to provide water and sewer sufficient
to develop the Boardwalk Subdivision. (**Exhibit 41**)

45. On December 17, 2019 City Administrator Travis Dierker responded by stating:

> "Your letter states that the City has failed its obligation to provide water or
> sewer services to the site.  We would contend that the water and sewer
> services are to the site.  Whether or not these water and sewer services are
> sized or built to the capacity that you are requesting for the development
> you are interested in starting is a different question.  Therefore, the city has
> met the obligation of providing water and sewer to the site."

(**Exhibit 42**)

**Count I**
**Intentional Fraudulent Misrepresentation**

46. Plaintiff restates, realleges, and incorporates by reference herein paragraphs 1 through
45 as set forth herein verbatim.

47. Defendant represented to Plaintiff that water and sewer would be available to Plaintiff
for the development of the Boardwalk subdivision consisting of 251 lots when
Defendant accepted the water and sewer facilities from MoDOT.

48. The above described representation was made by Defendant with the intent that Plaintiff
rely on such representation in purchasing the Boardwalk property.

49. The above described representation was false.

---

[5] In the interest of brevity, a copy of pages 1 and 2 only is marked Exhibit 40.

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

50. Defendant knew that the above described representation was false or recklessly supplied false information.

51. That the availability of adequate water and sewer service that was suitable for the development of a 251 lot residential subdivision was material in the Plaintiff's purchase of the Boardwalk property and Petition for Annexation showing a 251-lot residential development.

52. Plaintiff relied on the above described representation in purchasing the Boardwalk property, and such reliance was reasonable under the circumstances.

53. That as a direct result of the above described representation, Plaintiff sustained damage.

WHEREFORE, Plaintiff prays judgment against Defendant in such sum is as fair and reasonable, and the cost of this action, and for such other and further relief as is just and proper under the circumstances.

## Count II
### Fraudulent Misrepresentation by Concealment

54. Plaintiff restates, realleges, and incorporates by reference herein paragraphs 1 through 53 as set forth herein verbatim.

55. Defendant failed to disclose that it had changed the location of the booster pump station to an elevation 34 feet higher than shown on the original MoDOT plans and therefore could not provide adequate water flow to the booster pump to provide sufficient pressure to the proposed Boardwalk Subdivision of 251 lots to meet St. Clair Fire Department requirements.

56. Defendant had a duty to disclose these facts because Plaintiff was entitled to know because of a fiduciary or other similar relation of trust and confidence between the parties, or because Defendant knew such disclosure was necessary to prevent

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

Defendant's statements regarding the booster pump capacity from being misleading or because Defendant knew Plaintiff was about to enter into a contract to purchase real estate under a mistake as to the city's ability to provide adequate water pressure to the Boardwalk Subdivision, and because of the relationship between the parties (and particularly because Defendant is a governmental entity), Plaintiff would reasonably expect a disclosure of these facts and Defendant had superior knowledge.

57. That Defendant intended that Plaintiff purchase the real estate to be developed as Boardwalk Subdivision and annex it into the City of St. Clair in the absence of the information that was concealed.

58. The information concealed by Defendant was material to the Plaintiff's purchase of the real estate to be known as Boardwalk Subdivision and its annexation into the City of St. Clair.

59. Plaintiff relied on the absence of the information concealed in purchasing the real estate to be known as Boardwalk Subdivision and annexing said real estate into the City of St. Clair, and such reliance was reasonable under the circumstances.

60. As a direct result of the absence of the information concealed, Plaintiff sustained damage.

WHEREFORE, Plaintiff prays judgment against Defendant in such sum is as fair and reasonable, and the cost of this action, and for such other and further relief as is just and proper under the circumstances.

### Count III
### Negligent False Misrepresentation

61. Plaintiff restates, realleges, and incorporates by reference herein paragraphs 1 through 60 as set forth herein verbatim.

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

62. Defendant represented to Plaintiff that water and sewer would be available to Plaintiff for the development of the Boardwalk property consisting of 251 lots when Defendant accepted the water and sewer facilities from MoDOT.

63. The above described representation was made by Defendant with the intent that Plaintiff rely on such representation in purchasing the Boardwalk property.

64. Defendant made the above described representation knowing that it was false at the time the representation was made, or alternatively, without knowing it was true or false.

65. Defendant failed to use ordinary care in making the above described representation.

66. That the availability of adequate water and sewer service that was suitable for the development of a 251 lot residential subdivision was material in the Plaintiff's purchase of the Boardwalk property and Petition for Annexation showing a 251-lot residential development.

67. Plaintiff relied on the above described representation in purchasing the Boardwalk property, and such reliance was reasonable under the circumstances.

68. That as a direct result of the above described representation, Plaintiff sustained damage.

WHEREFORE, Plaintiff prays judgment against Defendant in such sum is as fair and reasonable, and the cost of this action, and for such other and further relief as is just and proper under the circumstances.

### Count IV
### Negligent Misrepresentation

69. Plaintiff restates, realleges, and incorporates by reference herein paragraphs 1 through 68 as set forth herein verbatim.

70. The Defendant provided information to Plaintiff regarding its suppling water and sewer service with respect to the development of the Boardwalk property in the course of its

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

governing of the City of St. Clair.

71. Due to the Defendant's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false.

72. The Defendant intentionally provided the information for the guidance of the Plaintiff in connection with the development of the Boardwalk property.

73. The Plaintiff justifiably relied on the information provided by the Defendant.

74. That as a result of the Plaintiff's reliance on the statements of Defendant, Plaintiff suffered a pecuniary loss.

Wherefore, Plaintiff pray of this Court, after trial by jury, that it enters judgement on Count IV in Plaintiff's favor in an amount that will be proven at trial; the taxable costs of litigation; and for such other and further relief as this Court deems proper.

## Count V
## Inverse Condemnation
## 5th and 14th Amendments of United States Constitution and Article I, Section 26 Missouri Constitution

75. Plaintiff restates, realleges, and incorporates by reference herein paragraphs 1 through 74 as set forth herein verbatim.

76. The Fifth and Fourteenth Amendments of the United States Constitution prevent government entities from taking private property without providing just compensation.

77. Article I, Sec 26 of the Missouri Constitution states that "private property shall not be taken or damaged for public use without just compensation."

78. Plaintiff has expended more than $2,000,000 in connection with the purchase and other expenditures in the legitimate expectation of building the Boardwalk Subdivision.

79. Plaintiff had a protectable property interest in the property commonly known as the Boardwalk Subdivision and more particularly described in **Exhibit 1**.

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

80. Defendant has interfered with the Plaintiff's reasonable enjoyment of the property as described in Exhibit 1 by failing to provide the necessary water and sewer to the property for its development into the Boardwalk Subdivision.

81. The Defendant has further taken Plaintiff's property by denying the subdividing of the property into two minor subdivisions.

82. Defendant's acts are an arbitrary and unreasonable interference with Plaintiff's property rights based on the Petition for Annexation, City Ordinance 1428 and Franklin County Commission 6-257 all of which provided for normal municipal services including water and sewer for the development of the Boardwalk Subdivision.

83. The economic impact of the Defendant's acts has caused Plaintiff substantial losses, including the purchase cost of the property, bank interest, engineering fees, taxes, an inability to sell the property at a substantially discounted price and lost business opportunity in the form of lost home sales.

84. The acts of the Defendant have interfered with the distinct investment-backed expectations of Plaintiff by precluding the development of the property into a major residential development which would generate substantial profits for the Plaintiff.

85. The character of the Defendant's actions was such that they constitute an almost complete physical and economic taking of Plaintiff's property.

86. The Defendant by failing to provide water and sewer suitable for subdivision development and trying to force Plaintiff into a development agreement invaded and appropriated Plaintiff's valuable property rights in said property and Plaintiff is directly and specifically affected by these actions of the City.

87. Defendant's conduct as aforesaid is arbitrary, unreasonable, unconstitutional and

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

capricious, and is not based upon the reasonable exercise of authority but rather designed to cause damage and injury to Plaintiff.

88. Defendant's conduct as aforesaid is part of a government policy and pattern of arbitrary, unconstitutional, irrational, unreasonable and capricious conduct and custom by the Defendant.

89. As a direct and proximate result of the Defendant's unconstitutional and unlawful actions, Plaintiff has incurred substantial damages in excess of $25,000, exclusive of interest and costs.

90. An award of reasonable attorneys' fees incurred herein to Plaintiff is especially appropriate here in order to balance the benefits between the parties, based on Defendant's bad faith actions intentionally undertaken with a wrongful purpose in attempting to get Plaintiff to put in the water and sewer system when it was the responsibility of the Defendant, and such an award would be beneficial to the public at large to deter Defendant from engaging in such improper conduct in the future.

WHEREFORE, Plaintiff prays that after trial by jury, this Court enter judgement on Count V in Plaintiff's favor in an amount that will be proven at trial for the taking of the tract of land described in **Exhibit 1**; for prejudgment interest; costs of litigation; and for such other and further relief as this Court deems proper.

**Count VI**
**42 USC §1983 & 42 USC §1988**

91. Plaintiff restates, realleges, and incorporates by reference herein paragraphs 1 through 90 as set forth herein verbatim.

92. That Plaintiff has a protected property interest in the Boardwalk property to which the Fourteenth Amendment's due process protection applies.

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

93. The Defendant and its Board of Alderman, Mayor and City Administrator have been operating under color of ordinance, regulation, custom or usage at all times mentioned herein.

94. The Defendant and its Board of Alderman, Mayor and City Administrator have deprived Plaintiff of its rights to the enjoyment of its property described in Exhibit 1 under the 5th and 14th Amendments of the United States Constitution by failing to provide adequate municipal water and sewer service to the Boardwalk property.

95. The Defendant's failure to provide Plaintiff with adequate water and sewer suitable for the Boardwalk Subdivision of 251 lots deprived Plaintiff of a right, privilege or immunity secured by the Constitution or the laws of the United States.

96. The acts of the Defendant and its Board of Alderman, Mayor and City Administrator were truly irrational since there would be no reason for Plaintiff to annex the property into the City of St. Clair if Defendant was not going to provide adequate water and sewer service.

97. That it was truly irrational for the Defendant to change the location of the booster pump station to an elevation 34 feet higher than that shown on the original MoDOT plans, grant the Petition for Annexation referenced in **Exhibit 31** above which was contingent upon Plaintiff acquiring the Boardwalk property, and thereafter conceal from Plaintiff that Defendant could not provide adequate water flow to the booster pump to provide sufficient pressure to the proposed Boardwalk Subdivision of 251 lots to meet St. Clair Fire Department requirements, and thereafter deny Plaintiff's Petition for De-annexation.

98. It was truly irrational for the Defendant to settle all claims with MoDOT, receive

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

$57,300 from MoDOT, and then not provide adequate water and sewer service to Plaintiff to develop the property into Boardwalk Subdivision as shown in the Petition for Annexation (**Exhibit 8**).

99. It was truly irrational, not based on logical reasoning, to agree to provide sewer service when their agreement with MoDOT clearly states that the Defendant has no right to allow Plaintiff and others to hook on to the sewer line that was in the MoDOT Right-of-Way. Plaintiff learned that Defendant had no right to grant Plaintiff access to the sewer system when denied a connection from MoDOT on October 31, 2016 (**Exhibit 12**).

100. The Defendant continues to act truly irrational by admitting the fact that the current water line is inadequate for the Boardwalk property and taking no action to remedy the situation as required by City Ordinance and Franklin County Commission Order.

101. The Defendant acted truly irrationally with respect to the sewer since they have no service at the property identified in **Exhibit 1** and since they do not have the right to place service connections on the MoDOT sewer line.

102. All of the Defendant's actions referenced herein were done while acting under color of state law.

103. As a direct and proximate result of the failure to provide adequate water and sewer service for the Boardwalk property and the resultant taking of Plaintiff's property, Plaintiff was deprived of its right to just compensation for the taking of private property for public use secured to it by the Fifth and Fourteenth Amendments to the United States Constitution.

104. As a direct and proximate result of the failure to provide adequate water and sewer service for the Boardwalk property, Plaintiff has suffered damages, which Plaintiff is

EXHIBIT A

Electronically Filed - Franklin County - August 12, 2020 - 04:22 PM

entitled to recover pursuant to 42 U.S.C 1983.

105.    As a direct and proximate result of the failure to provide adequate water and sewer service for Boardwalk Subdivision, Plaintiff has incurred, and will continue to incur, attorneys' fees, for which Plaintiff is entitled to reimbursement pursuant to 42 U.S.C. 1988.

WHEREFORE, Plaintiff prays judgment against Defendant in such sum is as fair and reasonable, for Plaintiff's attorneys fees incurred herein and the cost of this action, and for such other and further relief as is just and proper under the circumstances.

ECKELKAMP KUENZEL LLP

By:_____
Steven P. Kuenzel MBE No. 25658
steve@eckelkampkuenzel.com
200 West Main Street
P. O. Box 228
Washington, MO 63090
(636) 239-7861
(636) 239-1595 (fax)
Attorney for Defendant

EXHIBIT A